**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| ANN D. YANG, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-1954 (MSN/WEF) |
| | ) | |
| JOHN RATCLIFFE, Director of the Central Intelligence Agency, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant, Director Ratcliffe, in his official capacity, respectfully submits this memorandum of law in support of his motion to dismiss the Complaint in the above-captioned action pursuant to Rule 12(b)(6).

## INTRODUCTION

Plaintiff Ann D. Yang, Ph.D., who served as a language educator with the Central Intelligence Agency (CIA) from 2018 until she resigned in April 2021, alleges four counts under Title VII of the Civil Rights Act of 1964: (1) retaliation, (2) hostile work environment, (3) constructive discharge, and (4) disparate treatment based on race and national origin. Across a lengthy complaint, Plaintiff grounds her claims in nebulous and conclusory allegations. Plaintiff attempts to overcome this defect by overwhelming the Court with a convoluted tangle of names, dates, and perceived injustices—none of which plausibly support her complaint.

The complaint should be dismissed because it is deficient on at least five separate grounds. First, many of Plaintiff's claims are time-barred, as Plaintiff failed to timely exhaust her

administrative remedies. Second, many of Plaintiff's claims are linked to her grievances with the EEO process, which is not cognizable under Title VII. Third, the complaint is devoid of factual allegations that could plausibly suggest the challenged employment decisions were motivated by Plaintiff's race or national origin, relying instead on speculation and unsupported legal conclusions. Fourth, her retaliation claim fails to plead the essential elements required to state a plausible claim. Fifth, Plaintiff's complaint fails to set forth sufficient facts to meet the standard for a hostile work environment, much less the high bar for a claim of constructive discharge. For these reasons, the complaint fails to state a claim upon which relief can be granted and should be dismissed in its entirety.

## FACTUAL ALLEGATIONS[1]

### I. Plaintiff's Background and Employment History

Plaintiff, proceeding *pro se*, worked as a "career language educator" who has "native-level (ILR-5) fluency in both Mandarin Chinese and Taigi (the Taiwanese language)." Compl. ¶ 17. Plaintiff was employed by the CIA from 2018 until April 16, 2021, when she resigned. *Id.* ¶ 4, 24, 35. According to Plaintiff, after leaving the CIA she was hired "by another federal employer at a higher grade" and "passed a separate, full security-clearance adjudication." *Id.* ¶ 20.

Plaintiff asserts four counts: (1) retaliation, (2) hostile work environment, (3) constructive discharge; and (4) disparate treatment based on "national origin (Taiwan) and race (Asian, specifically Taiwanese of Hoklo ancestry)." *See id.* at p. 1. The gravamen of Plaintiff's complaint arises from disputes with her manager and coworker beginning in late 2019, culminating in Plaintiff's voluntary resignation in April 2021. A significant portion of Plaintiff's

[1] For the purposes of this motion to dismiss, Plaintiff's allegations are accepted as true.

complaint is also comprised of her disagreements with the EEO process. These disputes are described below.

**A. Plaintiff's CIA Employment: Allegations from Late 2019 to January 2021**

Plaintiff alleges that beginning in 2019 and continuing through her resignation in April 2021, she was subjected to a hostile work environment. Compl. ¶ 28. Plaintiff claims the harassment began as based on national origin and racial animus, when supervisor May F. "labeled Plaintiff 'Fukian' . . . a rendering of 'Fukien' (Fujian), the southeastern Chinese province from which Hoklo ancestors migrated to Taiwan centuries ago." *Id.* ¶ 29. Plaintiff does not specify when May F. used this term. *Id.* Plaintiff alleges that "applied to Plaintiff, a Hoklo Taiwanese American, the term was no neutral geographic reference: by defining her by her ancestors' Chinese provincial origin rather than her own Taiwanese identity, it reclassified her as Chinese" and constituted a discriminatory "epithet." *Id.* Plaintiff also alleges a coworker, Huey L., who also identified as 'Taiwanese Chinese" harassed Plaintiff "beginning no later than 2019." *Id.* For example, Plaintiff alleges that Huey L. sent her a "threatening text message late at night on July 30, 2020: 'Don't get yourself hurt.'" *Id.* Plaintiff alleges Huey L.'s "hostility toward Plaintiff" reflected an "ethnic hierarchy." *Id.* According to Plaintiff, her manager and coworker are of Taiwanese national origin, but they identify "their race as 'Hakka/Mainland Chinese' or 'Taiwanese Chinese.'" *Id.* at 2; *see also* ¶ 19. Plaintiff alleges that she "suffered discrimination because of the racial and ethnic distinction, not merely because of the national origin she shared with them."[2] *Id.* at p. 2. However, beyond May F.'s use of the term "Fukian," Plaintiff fails to allege any connection between her race or national origin and her treatment.

[2] Plaintiff also alleges that in their EEO proceeding affidavits, "five supervisors and coworkers independently conflated Plaintiff's Taiwan national origin and Hoklo Taiwanese race with 'Chinese.'" *Id.* ¶ 101.

According to Plaintiff, management had a "pre-determined plan to terminate her employment beginning no later than August 17, 2020." *Id.* ¶ 35. On August 17, 2020, May F. sent an email to the Unit front office with the subject heading "Concerns about [Plaintiff]" and requesting advice on "the next course of action in terms of termination of [Plaintiff's] employment at CIA." *Id.* ¶ 32. On September 4, 2020, management referred Plaintiff to an assigned EAP counselor for a psychological consultation. *Id.*; *see also id.* ¶ 98. Plaintiff alleges various other issues took place during that fall and early winter. *See id.* ¶ 37-38 (denial of sick leave beginning in August or October 2020); *id.* ¶ 33 (alleging that on October 26, 2020, Plaintiff had a disagreement over a teaching assignment); *id.* ¶ 33 (alleging that on November 4, 2020, supervisors began developing a performance plan for Plaintiff); *id.* ¶ 34 (alleging that on December 3, 2020, Plaintiff received a 90-day Advanced Work Plan (AWP) from Sondes D., and May F., which was rescinded on December 18, 2020).

**B. Plaintiff's CIA Employment: January 2021 to April 22, 2021**

Plaintiff alleges that from January 22, 2021 through April 7, 2021, supervisors worked to implement a Performance Improvement Plan (PIP), but Plaintiff concedes it was not implemented before Plaintiff resigned voluntarily. *Id.* ¶¶ 34, 36. Plaintiff further alleges that at an unidentified time, May F. and Sondes D. disclosed her EEO complaint to "unauthorized parties" and linked her EEO complaint to her performance. *Id.* ¶¶ 27, 72.

Plaintiff also alleges that on January 26, 2021, supervisor Sondes D. forwarded Plaintiff's EEO disclosures to Michael R., and the next day, Michael R. "flagged" Plaintiff to CIA security personnel, who initiated a security referral "directly tied to Plaintiff's protected EEO activity." *Id.* ¶ 23. On April 22, 2021, about one week after Plaintiff resigned, Plaintiff alleges that "supervisor May F. was actively inquiring about revoking Plaintiff's security clearance." *Id.* ¶

24. Plaintiff does not allege that anything resulted from this purported referral or inquiry, such as revocation of her security clearance.

### C. Allegations Regarding EEO Process

Plaintiff makes numerous allegations regarding her issues with the EEO proceedings themselves. *See id.* at p. 2, ¶¶ 25-26, 30, 40-42, 44 (alleging the CIA's incorrect identification of Plaintiff's national origin during EEO proceedings constitutes direct evidence of racial animus); *see also id.* ¶¶ 46-52, 63-68, 84-94 (alleging agency's FOIA responses reflected flaws in the EEO process); *id.* ¶ 99 (alleging she was not given official time for EEO engagements from March to April 2021); *id.* ¶ 120 (alleging that CIA's reference to protected status during EEO proceedings constitutes disparate treatment).

## II. Plaintiff's EEO Activity

Plaintiff states her informal EEO complaint was lodged on January 22, 2021 (and a notice of intent to file on January 14, 2021). *Id.* ¶ 6. Plaintiff further states that she filed a formal EEO complaint on April 9, 2021, amended it on April 19, 2021, and again amended on August 10, 2021. *Id.* According to Plaintiff, beginning on January 24, 2020, she engaged in other protected activity, such as reporting and opposing harassment and disparate treatment through her chain of command. *Id.*; *see also id.* ¶ 70 (claiming she reported harassment through her chain of command beginning no later than late 2019).

Plaintiff does not allege when any individual supervisor learned about her pre-January 2021 protected activity.

After proceedings at the administrative level, Plaintiff then filed suit in this Court, filing the Complaint on July 2, 2026. *See* ECF No. 1.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of the complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, the Court should "assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor." *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). The Court, however, is not required to accept legal conclusions as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).

A complaint should be dismissed for failure to state a claim upon which relief may be granted if the plaintiff fails to meet her obligation to provide the grounds for entitlement to relief. *Twombly*, 550 U.S. at 555. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; rather, the plaintiff must allege facts that are sufficient "to state a claim to relief that is *plausible on its face*." *Twombly*, 550 U.S. at 555, 570 (emphasis added).

This requirement is equally applicable to claims of employment discrimination brought pursuant to Title VII. *See McCleary-Evans v. Maryland Dep't of Trans.*, 780 F.3d 582, 588 (4th Cir. 2015); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010). Although a "plaintiff is not required to plead facts that constitute a [Title VII] prima facie case in

order to survive a motion to dismiss," the "factual allegations must be enough to raise a right to relief above the speculative level," and therefore "the Court looks to the elements of a prima facie case but does not require proof of the elements, only plausibility." *Robinson v. Loudon Cty. Pub. Sch.*, 2017 WL 3599639, at *3 (E.D. Va. Aug. 18, 2017) (alteration and quotation marks omitted). In other words, "the court's inquiry at this stage is merely whether an alternative, non-discriminatory explanation renders the allegations implausible." *Woods v. City of Greensboro*, 855 F.3d 639, 650, 652 (4th Cir. 2017); *see also Sherlock v. Apex Sys., Inc.*, 2012 WL 3062708, at *3 (E.D. Va. July 26, 2012) ("Plaintiff's allegations must plausibly—or reasonably—infer the existence of the prima facie elements.").

While it is true that the Court must "liberally construe a *pro se* litigant's complaint," the Court "need not attempt 'to discern the unexpressed intent of the plaintiff.'" *Laber v. U.S. Dep't of Defense*, 2021 WL 5893293, at *2 (E.D. Va. Dec. 13, 2021) (quoting *Laber v. Harvey*, 438 F.3d 404, 413, n.3 (4th Cir. 2006)). Nor does the liberal pleading standard "excuse a clear failure in the pleadings to allege a federally cognizable claim." *Id.* (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990)).

## ARGUMENT

### I. PLAINTIFF FAILED TO TIMELY EXHAUST HER CLAIMS ARISING FROM CONDUCT BEFORE NOVEMBER 2020

For any claim of discrimination to be properly exhausted, the underlying challenged action must have been brought to the attention of an EEO counselor within 45 days of the action. *See* 29 C.F.R. § 1614.105(a); *see also Guerrero v. Lynch*, 621 F. App'x 755, 756 (4th Cir. 2015) (per curiam). This requirement ensures that claims are promptly investigated while the facts and memories are still fresh. *See Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012). Here, Plaintiff alleges that her first EEO contact was at the earliest, January 14, 2021, Compl. ¶ 6,

meaning that any discrete actions occurring before November 30, 2020 (*i.e.*, 45 days), are time-barred. *See id*; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (noting that for purposes of, *inter alia*, timely exhaustion, each alleged "incident of discrimination" stands alone). Accordingly, the lengthy string of conduct alleged within the Complaint—starting in late 2019 and stretching into the fall of 2020—was not timely raised administratively because it occurred *long* before November 30, 2020. *See, e.g.*, Compl. ¶ 29 (alleging harassment that began "no later than late 2019"); ¶ 35 (alleging plan to terminate Plaintiff that began in August 2020); ¶ 29 (alleging a threatening text message was sent in July 2020); ¶ 37-38 (alleging denial of sick leave in August or October 2020). Thus, Plaintiff's claims regarding conduct before November 30, 2020, are irreparably barred and should be dismissed with prejudice, pursuant to Rule 12(b)(6). *See Saunders v. Stone*, 758 F. Supp. 1143, 1145 (E.D. Va. 1991), *aff'd*, 948 F.2d 1282 (4th Cir. 1991).

## II. PLAINTIFF FAILS TO STATE A DISCRETE ACT CLAIM OF RACE OR NATIONAL ORIGIN-BASED DISPARATE TREATMENT (COUNT IV)

Even putting aside the issue of exhaustion, Plaintiff's discrimination claims under Title VII should both be dismissed because she fails to allege any non-conclusory facts that tend to show the alleged adverse actions were motivated by her race or national origin.

Title VII makes it unlawful to "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiffs can prove discrimination based on disparate treatment either by direct evidence or through circumstantial evidence via the burden-shifting framework established in *McDonnel Douglas*. The *prima facie* showing for disparate treatment under that framework requires the plaintiff to establish: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4)

different treatment from similarly situated employees outside the protected class. *Cosby v. S.C. Probation, Parole & Pardon Services*, 93 F.4th 707, 714 (4th Cir. 2024) (citing *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). The plaintiff need not allege every element of a prima facie case, but she is "required to allege facts to satisfy the elements of a cause of action created by th[e] statute." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020).

Here, Plaintiff's disparate treatment claim fails for two independently sufficient reasons. First, Plaintiff's allegations fail to identify any legally cognizable "adverse employment actions." Second, Plaintiff fails to allege facts sufficient to plausibly show circumstances giving rise to an inference of discrimination. We address each deficiency in turn.

### A. Plaintiff's Alleged Adverse Employment Actions are Not Legally Cognizable

As a threshold matter, Plaintiff has not established that the treatment she experienced constituted adverse employment actions under Title VII. For years, the Fourth Circuit has read public sector and private sector Title VII action synchronically in only allowing relief for alleged discrimination where there are "adverse employment actions" that cause "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or . . . a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011); *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007); *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377-78 (4th Cir. 2004); *Boone v. Goldin*, 178 F. 3d 253, 255 (4th Cir. 1999).

More recently though, the Supreme Court—albeit in *dicta*—signaled a potential change to this standard for federal sector employees. *See Babb v. Wilkie*, 140 S. Ct. 1168 (2020). The primary issue in that case was the proper causation standard for claims of age discrimination brought under the Age Discrimination in Employment Act ("ADEA"). *Id.* at 1171. In

discussing that issue, the Court noted that the ADEA's federal-sector provision (like that in Title VII) authorizes liability for "personnel actions." *Id.* at 1172-73 (quoting 29 U.S.C. § 633a(a)); *see also* 42 U.S.C. § 2000e-16(a) (providing that "[a]ll *personnel actions* . . . shall be free from any discrimination based on race, color, religion, sex, or national origin"). On that collateral point, the Court stated that although "the ADEA does not define this term, its meaning is easy to understand," and pointed to a statutory provision of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 2302(a)(2)(A), that provides a list of employment decisions that constitute a "personnel action." *Id.* at 1173. Plaintiff's Complaint here does not allege any claim under the ADEA, but in an abundance of caution, Defendant assumes for purposes of this motion that the *dicta* from *Babb* also applies to the term "personnel action" in Title VII.

For the vast majority of employment-related decisions, this modification will have little, if any, actual impact on the adjudication of federal-sector employment discrimination claims: what is an "adverse action" will equally be a "personnel action," and vice versa. To this end, the CSRA lists the following, *inter alia*, as "personnel actions": (1) appointments (*i.e.*, hiring decisions); (2) promotions; (3) suspensions, removals, "or other disciplinary or corrective actions"; (4) a "decision concerning pay, benefits, or awards"; and (5) "any other *significant* change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A) (emphasis added).

In this case, Plaintiff's allegations do not rise to the level of an adverse employment action under the Fourth Circuit's existing standard or an adverse personnel action as defined under the CSRA. Plaintiff does not allege that she was: terminated; there was any decrease in her position, salary, or benefits (apart from unsupported assertions that certain requests to utilize accrued leave were rejected); she was suspended or removed; or that she was actually reassigned

to another position. Further, her existing allegations do not allege a "significant change" as to the terms and conditions of her employment. Rather, Plaintiff merely describes a PIP that was never instituted and minor disputes over her duties. *See, e.g.*, *Peterson v. West*, 2011 WL 1010424, at *2 (4th Cir. 2001) (change in job duties, in of itself, is not sufficient to show an adverse employment action where employee's title, level, benefits, and salary remained the same). These instances, though perhaps unpleasant, do not amount to the type of adverse employment actions this Court requires.

**B. Plaintiff Does Not Plausibly Allege Facts Sufficient to Raise a Reasonable Inference of Unlawful Discrimination.**

Next, Plaintiff's claims must be dismissed because the Complaint fails to plausibly allege that Defendant acted with discriminatory intent. Such conclusory pleading is insufficient to state a claim under Rule 12(b)(6). The fourth element of a disparate treatment claim requires plaintiffs to show different treatment from similarly situated employees outside the protected class. *See Cosby v. S.C. Probation, Parole & Pardon Services*, 93 F.4th 707, 714 (4th Cir. 2024). For this element, the plaintiff must provide evidence that demonstrates their comparators are not just similar in "*some* respects," but similarly situated "*in all respects*." *Id.* at 714 (quoting *Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019)). As such, the plaintiff must prove that both she and her comparator were subject to the same standards, had the same supervisor, and engaged in similar conduct without circumstances that "distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 224 (4th Cir. 2019)). Even though comparison between employees will never involve precisely the same offenses, conduct, or time period, the "similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Id.* (quoting *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008)). The reason

courts tend to reframe this element in terms of comparators is because it is often the method used to demonstrate that the adverse employment action occurred under circumstances that raise a reasonable inference of unlawful discrimination. *See Johnson v. Baltimore City, MD*, 163 F.4th 808, 815 (4th Cir. 2026). At bottom, nothing presented in the Complaint plausibly shows circumstances that give rise to an inference of discrimination—instead, Plaintiff asks the Court to take her word for it.

The Fourth Circuit has squarely held that discrimination claims exactly like that brought by Plaintiff here must be dismissed. *See McCleary-Evans*, 780 F.3d at 588; *Coleman*, 626 F.3d at 190-191. *Coleman* is particularly instructive. There, the plaintiff brought a Title VII claim alleging that his termination was motivated by racial animus. 626 F.3d at 189. Coleman's complaint specifically averred that he "was treated differently as a result of his race than whites and specifically identif[ied] [another employee] as a white person who was not disciplined despite having" allegedly engaged in similar misconduct. *Id.* at 191. But under *Twombly* and *Iqbal*, the Fourth Circuit held that these were legally insufficient allegations. Specifically: "[T]he complaint fails to establish a plausible basis for believing [the specified white employee] and Coleman were actually similarly situated or that race was the true basis for Coleman's termination." *Id.* The Court noted that Coleman's complaint was devoid of any specific allegations comparing Coleman with his colleague beyond the generalized and conclusory statement that they were treated differently because of race. *Id.* "Absent such support," the Court concluded, "the complaint's allegations of race discrimination do not rise above speculation." *Id.*

Here, as in *Coleman*, Plaintiff generically claims discrimination because of race and national origin without providing any specific allegations that would support her conclusory

claims of discrimination. Rather, Plaintiff's "naked allegations . . . are not more than conclusions, and therefore do not suffice." *McCleary-Evans*, 780 F.3d at 588. Without any factual allegations, Plaintiff only invites the Court to engage in impermissible speculation that any alleged adverse event was caused by Plaintiff's race or national origin. *See McCleary-Evans*, 780 F.3d at 585; *see also Benahmed v. BAE Sys. Tech. Sols. & Servs., Inc.*, 2013 WL 80160, at *2 (D. Md. Jan. 4, 2013) (rejecting bare allegations "that Defendant took a variety of adverse actions against Plaintiff 'because of' or 'based on' his race and/or national origin" as insufficient to state a claim).

Plaintiff's reference to "SJ" as a comparator does not save her claims. Compl. ¶ 119. Plaintiff alleges that SJ was a female employee of Taiwan national origin who self-identified as Asian but did not self-identify as Hoklo Taiwanese, and who "was favored in overtime assignments and in monetary awards." Compl. ¶¶ 39, 119. Plaintiff makes no claims that plausibly shows that SJ was favored due to her race or national origin. Plaintiff makes no claims that plausibly show she sought out but did not receive overtime assignments or monetary awards. A plaintiff does not need to allege a comparator in order to state a plausible claim, but if she chooses to do so, then she must allege a comparator who is "similar in all relevant respects," meaning they had the "same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (cleaned up).

In *Coleman*, for example, the Fourth Circuit affirmed the dismissal of the plaintiff's discrimination claim despite his allegation that a white coworker was not disciplined for allegedly similar misconduct. 626 F.3d at 191; *see also Guillen v. Esper*, 2020 WL 3965007, at

*11 (E.D. Va. July 13, 2020) (dismissing claim where the plaintiff "provided virtually no details about the specific job titles, responsibilities, or qualifications of the individuals she identifies as her comparators"); *Yin v. CTI Consultants, Inc.*, 2018 WL 1569486, at *7 (E.D. Va. Mar. 30, 2018) (declining to give bare allegation of "similarly situated" employees any "talismanic" meaning and dismissing claim). Here, as in *Coleman*, *Guillen*, and *Yin*, Plaintiff's Complaint lacks any allegations comparing herself to SJ to show how they are "similar in all relevant respects." Therefore, this allegation does not advance the plausibility of her discrimination claims.

Plaintiff also alleges that a purported comment by May F. constitutes evidence of race and national origin discrimination. *See* Compl. ¶ 29. Crucially, Plaintiff does not identify when this comment took place, but seems to suggest that it took place "no later than late 2019." *Id.* ¶¶ 28-29 (alleging harassment began in 2019). This is more than six months before the alleged plan to terminate Plaintiff took shape in August 2020, more than a *year* before Plaintiff's first EEO activity in January 2021, and almost 1.5 years before Plaintiff's voluntary resignation. *See, e.g.*, *Rayyan v. Virginia Dep't of Transp.*, 719 F. App'x 198, 202 (4th Cir. Feb. 13, 2018) ("[D]iscriminatory comments cannot be remote in time from the adverse action."); *id.* at 203 ("Given the isolated nature of Shropshire's alleged statements and the lapse in time between the comments and Rayyan's dismissal [six months], these statements are not direct evidence of discrimination[.]"); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511-12 (4th Cir. 1994). Thus, this allegation does not support Plaintiff's claim of discrete act discrimination based on race or national origin.

To the extent Plaintiff argues there were deviations from internal policies regarding her EAP referral or performance appraisals, these allegations are also legally insufficient to plead a

plausible claim of discrimination. While a plaintiff may sometimes use procedural irregularities to support a claim of pretext at the summary judgment stage, the mere existence of a bureaucratic deviation does not, by itself, raise an inference of discriminatory intent under Rule 12(b)(6). To state a claim, Plaintiff must allege facts linking the procedural deviation to her protected characteristics. *See, e.g.*, *Russell v. Harlow*, 771 F. App'x 206, 207-08 (4th Cir. 2019) (per curiam) (internal quotation marks omitted), *affirming* 2018 WL 4137018 (Ellis, J.) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent.").[3] Here, the Complaint contains no facts suggesting that the decision to refer Plaintiff to EAP was done to disadvantage Plaintiff because of her race or national origin. Absent such a factual nexus, Plaintiff's procedural allegations amount to nothing more than a critique of the Agency's administrative practices, which courts do not sit to second-guess.

**III. Plaintiff fails to state a claim for hostile work environment (Count II).**

Plaintiff has failed to state a claim for hostile work environment. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

[3] *See also Randle v. City of Aurora,* 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal *procedures* does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual."); *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 421 (D.S.C. 2014) ("courts have generally recognized that an employer's unfair deviation from its own termination procedures or its failure to adhere to common notions of fairness in the termination process is not probative of discriminatory intent and cannot show pretext"); *Butler v. Berkeley Cty. Sch. Dist.*, No. 2:98-cv-369-11, 2000 WL 33158371, at *5 (D.S.C. Mar. 29, 2000) ("[E]ven if the defendants did not follow all the procedures, the mere fact that an employer did not follow its own procedures does not suggest that an employer was motivated by illegal discriminatory intent." (citation omitted)), *aff'd*, 238 F.3d 410 (4th Cir. 2000) (unpublished table decision).

sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Employers violate this provision when the workplace is permeated with discriminatory intimidation that is "sufficiently severe or pervasive" so as to alter the conditions of employment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

To survive a motion to dismiss on this claim, Plaintiff must allege "conduct [that] was (1) unwelcome; (2) based on a protected class; (3) sufficiently severe or pervasive to alter the conditions of her employment; and (4) imputable to her employer." *Bliss v. Garland*, 2023 WL 4627435, at *8 (E.D. Va. July 19, 2023) (citation omitted). The severe or pervasive requirement is a "high bar" that is not satisfied merely by "incidents that would objectively give rise to bruised or wounded feelings," "rude treatment by coworkers," or "callous behavior by one's superiors." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2006) (citation modified). Instead, a workplace must be "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Roberts v. Fairfax Cnty. Pub. Schs.*, 858 F. Supp. 2d 605, 609 (E.D. Va. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). "Conduct must be extreme to amount to a change in the terms and conditions of employment." *Rizkalla v. Eng'g, Mgmt. & Integration, Inc.*, 2006 WL 4459434, at *13 (E.D. Va. Aug. 29, 2006).

To the extent Plaintiff asserts a retaliatory hostile work environment in addition to one based on race or national origin animus, the Fourth Circuit has held that in order to "satisfy the third element of the claim, a plaintiff must show that they were placed in a 'retaliatory hostile work environment . . . *so severe or pervasive* that it would dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Barnhill v. Bondi*, 138 F.4th 123, 140 (4th Cir. 2025) (quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 217 (4th Cir. 2022) (emphasis added)).

"This high burden cannot be satisfied by claims based on 'petty slights or minor annoyances.'" *Barnhill*, 138 F.4th at 140 (quoting *Laurent-Workman*, 54 F.4th at 218).

Here, Plaintiff alleges that she was subject to a hostile work environment due to "animus toward her national origin (Taiwan) and race (Taiwanese, of Hoklo ancestry)"; Plaintiff's supervisor May F. labeling Plaintiff "Fukian"; Plaintiff's coworker Huey L. sending a supposedly threatening text message, dismissing her class early, and falsely claiming poor work performance; CIA officials labeling Plaintiff's national origin and racial identity as "China" and "Chinese" rather than "Taiwan" and "Taiwanese American" and using the term "Fukian" during EEO proceedings; Plaintiff's management discussing her termination and referring her for a psychological consultation; Plaintiff receiving a poor performance review and allegedly being placed on an Advanced Work Plan (AWP) and Performance Improvement Plan (PIP); Plaintiff's employer denying her use of sick leave in certain instances and accusing her of "lacking team spirit"; and finally, Plaintiff's eventual resignation from her position with the CIA. Compl. at 10-19.

The environment of which Plaintiff complains amounts to the "ordinary tribulations of the workplace" that fall *far* short of the high bar required for a hostile work environment. *Farragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). As the Fourth Circuit has explained, "a single offensive utterance—e.g., simple teasing or an offhand comment" does not amount to a hostile work environment "without significant repetition or an escalation in the harassment's severity." *Boyer-Liberteau v. Fontainebleau Corp.*, 786 F.3d 264, 284 (4th Cir. 2015) (en banc) (cleaned up). Indeed, Courts routinely reject hostile work environment claims based on much more unpleasant conduct than what Plaintiff challenges here. *See, e.g.*, *Holloway v. Maryland*, 32 F.4th 293, 301 (4th Cir. 2022) (holding workplace conduct not severe or pervasive when, *inter alia*, plaintiff's "leadership and budget management" were "criticized . . . in meetings," supervisor

"yelled at [plaintiff], slammed documents onto a table, and required [plaintiff] to address him as 'sir,'" and supervisor "required [plaintiff] to sign a disciplinary evaluation or else be considered insubordinate"); *Roesinger v. Pohanka of Salisbury, Inc.*, 2024 WL 701776, at *3 (4th Cir. Feb. 21, 2024) ("[A] boss who plays favorites and criticizes one's work, colleagues who give the cold shoulder, and 'the sporadic use of abusive language' are 'ordinary tribulations of the workplace' that . . . do not implicate Title VII." (citation omitted)); *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219-20 (4th Cir. 2013) (supervisor "'mockingly' yell[ed] at [plaintiff] in one meeting," "yell[ed] and pound[ed] her hands on her desk during another meeting," "'repeatedly harp[ed]' on a mistake made by [plaintiff]," made "'snide comments' to [plaintiff]," "play[ed] favorites with employees and pitt[ed] employees against each other," and "unfairly scrutiniz[ed] and criticiz[ed] [plaintiff's] . . . compliance with . . . directives"); *McNeal v. Montgomery Cnty.*, 307 F. App'x 766, 776 (4th Cir. 2009) (supervisor's "comments about [plaintiff's] race and appearance, combined with her scrutiny of his sick leave and accusations of theft" not severe or pervasive).

Here, Plaintiff's allegations do not come close to severe or pervasive conduct that is "so extreme as to amount to a change in the terms and conditions of employment" as required to state a claim for a hostile work environment. *Sunbelt Rentals*, 521 F.3d at 315 (cleaned up). Plaintiff's "hurt feelings or offense" are not enough. *McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 408 (4th Cir. 2022). Accordingly, her hostile work environment claim should be dismissed under Rule 12(b)(6).

## IV. Plaintiff fails to state a claim for constructive discharge (Count III)

Plaintiff also argues that she was constructively discharged because she eventually resigned from her position in April 2021. Compl. ¶¶ 35-36. However, because Plaintiff has not plausibly alleged a hostile work environment claim, she cannot meet the even higher threshold for a

constructive discharge claim. *See Nnadozie v. Genesis Healthcare Corp.*, 730 F.App'x 151, 161-62 (4th Cir. 2018) (explaining that in order to prove a claim for constructive discharge, the plaintiff must not only satisfy the "high bar that is required to satisfy the severe or pervasive test," for establishing a hostile work environment, but must also "prove circumstances of discrimination so intolerable that a reasonable person would resign"); *see also id.* at 162 ("The 'intolerability' standard governing constructive discharge claims is more stringent than the 'severe and pervasive' standard for hostile work environment claims."). Indeed, "[m]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign. Even a slight decrease in pay coupled with some loss of supervisory responsibilities is insufficient evidence of constructive discharge." *Booz-Allen & Hamilton, Inc.*, 368 F.3d at 378; *see also EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 145 (4th Cir. 2017); *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (being yelled at, told you are a poor manager, required to work with an injured back and chastised in front of customers is not so intolerable as to compel a reasonable person to resign); *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 273 (4th Cir. 2001) (co-worker ostracism, denial of a management position and mandatory counseling for turning in an inaccurate time card would not have compelled a reasonable person to resign); *Munday v. Waste Mgmt. of N. Am., Inc.,* 126 F. 3d 239, 244 (4th Cir. 1997) (being ignored by co-workers and top management was insufficient to establish constructive discharge); *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (dissatisfaction with work assignments, perceived unfair criticism and difficult and unpleasant working conditions are not so intolerable as to compel a reasonable person to resign).

Accordingly, Plaintiff's constructive discharge claim should be dismissed

## V. Plaintiff Fails To State a Claim for Retaliation (Count I).

Finally, Plaintiff alleges that she was subjected to retaliation under Title VII. However, Plaintiff fails to state a claim for retaliation, because Plaintiff's allegations do not amount to an adverse action under any standard, and Plaintiff does not plausibly plead causation.

Under Title VII, 42 U.S.C. § 2000e-3(a), it is unlawful for an employer to discriminate against an employee because she has opposed an unlawful employment practice or because she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." To survive a motion to dismiss on a Title VII retaliation claim, Plaintiff must "allege beyond the speculative level that: '(1) [s]he engaged in a protected activity; (2) the employer acted adversely against [her]; and (3) there was a causal connection between the protected activity and the asserted adverse action.'" *Laber*, 2021 WL 5893293, at *3 (alterations in original) (quoting *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008)). Under this rubric, Plaintiff's claim fails for two primary reasons. First, Plaintiff fails to allege facts sufficient to plausibly demonstrate a materially adverse action. Second, even assuming she could establish that element based on her threadbare assertions, Plaintiff's complaint does not plausibly allege the necessary causal connection between that adverse action and her protected activity. We discuss each shortcoming in detail below.

As an initial, critical matter, Plaintiff's retaliation claim is strictly limited to events occurring after relevant managers allegedly learned of her protected activity, which at the earliest appears to be January 26, 2021. Compl. ¶¶ 23, 72 (alleging supervisor Sondes D. disclosed Plaintiff's EEO complaint to a manager outside of Plaintiff's chain of command). Under the anti-retaliation clause, "protected activity" encompasses both formal engagement with Equal

Employment Opportunity (EEO) proceedings as well as simple opposition to conduct perceived to violate Title VII. *See Boyer-Liberto v. Fontainebleu Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) ("Employees engage in protected oppositional activity when, inter alia, they 'complain to their superiors about suspected violations of Title VII.'" (citation omitted)). Oppositional activity is protected not only when the employment action is actually unlawful under Title VII but also employment actions reasonably believed to be unlawful. *Boyer-Liberto*, 786 F.3d at 282 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005)). Moreover, "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the causation element of a retaliation claim because, by definition, an employer cannot take action because of a factor of which it is unaware." *Smyth-Riding v. Scis. & Eng'g Servs., LLC*, 699 F. App'x 146, 153 (4th Cir. 2017) (internal quotation marks and citation omitted); *Seabrook v. Driscoll*, 148 F.4th 264, 273 & n.9 (4th Cir. 2025) (general allegation about knowledge of protected activity "within the command" or knowledge by virtue of a management position is "insufficient to raise a nonspeculative inference" that an individual manager knew about an employee's protected activity, much less that the manager retaliated against the employee because of it); *Guillen v. Esper*, 2020 WL 3965007, at *13 (E.D. Va. 2020) ("plaintiff's retaliation claim with respect to her termination fails for the independent reason that she has not adequately alleged that Captain Light, who was the 'deciding official with respect to her termination, was aware that she engaged in protected activity").[4]

Here, because the majority of Plaintiff's allegations of protected activity took place months before any relevant responsible management official is alleged to have knowledge of

[4] Thus, Plaintiff's repeated claim that she "reported and objected to the national origin and race-based harassment through her chain of command and the Agency's anti-harassment channels,"

Plaintiff's protected activity. Thus, these allegations cannot legally support her retaliation claim. Consequently, Plaintiff's claim rests entirely on her allegations that she was subjected to a proposed PIP that was never implemented, an inquiry about her security file and security clearance, alleged denied use of accrued leave, and disclosure of her EEO conduct. As demonstrated below, these actions—from which Plaintiff does not allege any negative career impact—does not constitute an actionable, materially adverse action.

### A. Plaintiff Fails to Plausibly Allege a Materially Adverse Action

In order to state a claim for retaliation, Plaintiff must allege that she suffered a "materially adverse action." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 216 (4th Cir. 2022). A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted). It "denotes some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 431 (4th Cir. 2015). In other words, the standard does not encompass "minor harms." *Laurent-Workman*, 54 F.4th at 216. Under this standard, "none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee 'AWOL'; or issuing a personal improvement plan, an 'Attendance Warning,' a verbal reprimand, a formal letter of reprimand, or 'a proposed termination.'" *Wonasue v. University of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D.

---

*see, e.g.*, Compl. ¶ 70, is insufficient to raise a nonspeculative inference of knowledge by a relevant deciding official.

Md. 2013) (citation omitted) (cleaned up); *Caleca v. Burns*, 2024 WL 4255052, at *7 (E.D. Va. Sept. 20, 2024) (Nachmanoff, J.) (same).

Here, at most, Plaintiff has alleged that she experienced nothing but "minor harms" following her manager learning about her protected activity.[5] Plaintiff alleges that from January 22, 2021 through April 7, 2021, supervisors worked to implement a Performance Improvement Plan (PIP), but Plaintiff concedes it was not implemented before Plaintiff resigned voluntarily. *Id.* ¶¶ 34, 36. Plaintiff further alleges that at an unidentified time, May F. and Sondes D. disclosed her EEO complaint to "unauthorized parties" and linked her EEO complaint to her performance. *Id.* ¶ 27.

Plaintiff also alleges that on January 26, 2021, supervisor Sondes D. forwarded Plaintiff's EEO disclosures to Michael R., and the next day, Michael R. "flagged" Plaintiff to CIA security personnel, who initiated a security referral "directly tied to Plaintiff's protected EEO activity." *Id.* ¶ 23. On April 22, 2021, about one week after Plaintiff resigned, Plaintiff alleges that "supervisor May F. was actively inquiring about revoking Plaintiff's security clearance." *Id.* ¶ 24. However, "[i]ncreased scrutiny of an employee under the general policies and disciplinary procedures governing her employment is . . . not an adverse employment action." *Dawson v.*

[5] The vast majority of the conduct that preceded any allegation of management knowledge of Plaintiff's protected activity similarly did not constitute anything but minor harms. *See* Compl. ¶ ¶ 33 (alleging that on October 26, 2020, Plaintiff had a disagreement over a teaching assignment); *id.* ¶ 33 (alleging that on November 4, 2020, supervisors began developing a performance plan for Plaintiff); *id.* ¶ 34 (alleging that on December 3, 2020, Plaintiff received a 90-day Advanced Work Plan (AWP) from Sondes D., and May F., which was rescinded on December 18, 2020).

*Rumsfeld*, 2006 WL 325867, at *6 (E.D. Va. Feb. 8, 2007). Plaintiff's allegations simply do not amount to a materially adverse action.

Plaintiff also makes numerous allegations about discrimination and retaliation in the course of her EEO proceedings. *See* Compl. at p. 2, ¶¶ 25-26, 30, 40-42, 44 (alleging the CIA's incorrect identification of Plaintiff's national origin during EEO proceedings constitutes direct evidence of racial animus); *see also id.* ¶¶ 46-52, 63-68, 84-94 (alleging structural flaws in the EEO process, evidenced by FOIA responses ); *id.* ¶ 99 (alleging she was not given official time for EEO engagements from March to April 2021); *id.* ¶ 120 (alleging that CIA's reference to protected status during EEO proceedings constitutes disparate treatment). But, as ample case law shows, claims regarding the handling of an administrative investigation are not cognizable under the employment discrimination statutes. Indeed, the anti-discrimination statutes (*e.g.*, Title VII, etc.) simply do not create a cause of action based on allegations that a federal agency has improperly processed administrative complaints of workplace discrimination. *See, e.g.*, *Webster v. Esper*, 2020 WL 974415, at *5 (E.D. Va. Feb. 28, 2020) (observing that "Title VII does not provide a cause of action for the alleged mishandling of an employee's discrimination complaint"); *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990) (holding that Title VII "creates only a cause of action for discrimination . . . not . . . an independent cause of action for the mishandling of an employee's discrimination complaints"), *aff'd*, 946 F.2d 1568 (D.C. Cir. 1991); *see also Sager v. McHugh*, 942 F. Supp. 2d 1137, 1147 (W.D. Wash. 2013); *Stoyanov v. Mabus*, 2011 WL 4397492, at *13 (D. Md. Sept. 20, 2011), *aff'd*, 470 F. App'x 128 (4th Cir. 2012); *Hill v. England*, 2005 WL 3031136, at *2-3 (E.D. Cal. Nov. 8, 2005).[6] In fact, federal

---

[6] Of course, this Court owes no deference to the CIA or EEOC's underlying factual determinations and conclusions as this Court reviews the action *de novo*. *See Laber v. Harvey*, 438 F.3d 404, 423-24 (4th Cir. 2006) (en banc). It is for this reason that "any procedural errors

regulation requires agencies to dismiss administrative complaints that seek relief based on "dissatisfaction with the processing of a previously filed complaint." 29 C.F.R. § 1614.107(a)(8); *see also Bolden v. Ashcroft*, 2005 WL 1903567, at *2 (D.D.C. July 15, 2005) (citing § 1614.107(a)(8)).

In addition, under any adverse action standard, an agency's putative failure to process administrative allegations of discrimination is divorced from an employee's actual employment and cause no actual harm to the employee; accordingly, it does not constitute the type of "adverse action" that can form the basis of a retaliation claim. In short, incorrect processing has "nothing at all to do with employment." *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002). Accordingly, "even if the EEO Division botched the processing of her complaint, [Plaintiff] is now already in a federal court on the merits, and any earlier mishandling is essentially moot." *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000). Plaintiff's allegations regarding the investigation of her administrative claims should thus be dismissed.

### B. Plaintiff Fails to Plausibly Allege a Causal Connection Between the Protected Activity and the Asserted Adverse Action

Next, Plaintiff fails to allege a sufficient causal connection between her protected activity and many alleged adverse actions. To the extent many of Plaintiff's allegations stem from perceived unfair performance criticism and an effort to terminate her employment, Plaintiff herself concedes this was underway well before she alleges anyone was aware of her protected activity. According to Plaintiff, management had a "pre-determined plan to terminate her employment beginning no later than August 17, 2020." Compl. ¶ 35. By contrast, she does not

---

by the agency's EEO office generally will have no impact on the de novo district court proceedings, unless the agency raises a defense that the plaintiff failed to exhaust administrative remedies." *Nielsen v. Hagel*, 666 F. App'x 225, 231 (4th Cir. 2016).

allege any deciding officials were aware of her protected activity until January 2021. *Compare* Compl. ¶ 23 (alleging that on January 26, 2021, supervisor Sondes D. forwarded Plaintiff's EEO disclosures to Michael R., and the next day, Michael R. "flagged" Plaintiff to CIA security personnel, who initiated a security referral "directly tied to Plaintiff's protected EEO activity"), *with* Compl. ¶ 70 (alleging "she reported and objected to the national origin and race-based harassment through [unidentified members of] her chain of command and the Agency's antiharassment channels"). This timing "be[lies] the conclusion that a reasonable fact-finder might find that [the employer's] activity was motivated by [plaintiff's] . . . complaints." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006). Moreover, although Plaintiff was not ultimately disciplined or issued a PIP, "[e]mployers need not suspend previously planned [actions] upon discovering [plaintiff's EEO activity], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Guillen v. Esper*, 2020 WL 3965007, at *13 (E.D. Va. 2020) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)).

In addition, Plaintiff's complaint lacks specificity with regard to dates of various allegations. This is particularly difficult for purposes of evaluating causation with respect to a retaliation claim. *See Guillen*, 2020 WL 3965007, at *13 ("The complaint does not specify when plaintiff complained to Wiedemann about Simpson's gender-based comment, which makes it impossible to tell whether that complaint could plausibly have any causal link to any subsequent adverse action."). Where Plaintiff pleads no other supporting facts to infer retaliation, she must allege facts demonstrating that the adverse action occurred "very close" in time to the protected activity. *See Breeden*, 532 U.S. at 272. Although the Fourth Circuit has declined to adopt any "bright-line rule" for what length of time can establish an inference of causation, courts regularly

find that a lapse of even two months negates any causal relationship. *See Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025) ("While there is not a bright-line rule instructing when temporal proximity is sufficient to establish causation, without other evidence of causation, the gap between the protected activity and the adverse employment action can generally be no longer than two months."); *Roberts v. Glenn Indus. Grp.*, 998 F.3d 111, 127 (4th Cir. 2021) (collecting cases); *Adkins v. Fairfax Cty. Sch. Bd.*, 2008 WL 2076654, at *6 (E.D. Va. May 15, 2008) (same). Accordingly, Plaintiff fails to state a claim for retaliation due to a lack of plausible causation for the many claims that are undated within her Complaint.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6).

Dated: October 15, 2026

Respectfully submitted,

TODD BLANCHE
ATTORNEY GENERAL

THEOPHANI K. STAMOS
FIRST ASSISTANT
UNITED STATES ATTORNEY

*By*: /s/

ELIZABETH WEISEL
ELIZABETH A. SPAVINS
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3785
Fax: (703) 299-3983
Email: lizzie.spavins@usdoj.gov
Elizabeth.Weisel@usdoj.gov
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that on this date, October 15, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and I certify that I caused a copy of the foregoing to be mailed via first-class mail to *pro se* Plaintiff at the following address:

**Ann D. Yang, Ph.D.**
10449 White Granite Drive, Unit 37
Oakton, VA 22124
PRO SE

/s/____________________
Elizabeth A. Spavins
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tels: (703) 299-3785
Fax: (703) 299-3983
Lizzie.spavins@usdoj.gov
*Counsel for Defendant*