FILED
10/17/2026
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANN D. YANG, Ph.D.,
Plaintiff,

v. Civil Action No. 1:26-cv-01954-MSN-WEF

JOHN RATCLIFFE, Director of the Central Intelligence Agency,
Defendant.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (DKT. 25)**

## Introduction: Each Count Is Pleaded with Dated Facts from the Agency's Own Records, and the Motion Measures Them Against Standards That Do Not Govern

Defendant has moved under Rule 12(b)(6) to dismiss all four counts of the verified Complaint (Dkt. 1). The motion (Dkt. 25), filed October 15, 2026, is supported by a memorandum (Dkt. 26) (together, the "Motion"). Each count of the Complaint pleads its elements with dated facts drawn from the Agency's own records: its officials' e-mails and sworn statements, its personnel instruments, and its EEO investigator's finding of a "Per Se Violation" (¶¶ 27, 72(f); Dkt. 15-2 at 5, PageID# 202). Thirteen of those facts are set out, with their pages, in Part II and Appendix A. Plaintiff Ann D. Yang asks that the Motion be denied.

The question on a Rule 12(b)(6) motion is plausibility, not proof: the Court accepts the well-pleaded facts as true and draws the reasonable inferences in the plaintiff's favor, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and an employment-discrimination complaint need not plead a prima facie case, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002) (Part I). The Motion measures the Complaint instead against the summary-judgment standard and against an adverse-action test the Supreme Court has set aside, neither of which governs here (Parts I, III.D).

The Motion states five grounds for dismissal (Dkt. 26 at 1–2). Taken in the order of the Complaint's counts, each has a verifiable answer.

First, the Motion says Count I (retaliation) "fails to plead the essential elements" (id. at 2) because no official knew of Plaintiff's protected activity before January 26, 2021 (id. at 20). The Complaint pleads that the opposition was made to her supervisors beginning January 24, 2020 (¶¶ 6, 28, 70). It further pleads that May F. disclosed it to the Unit front office on February 13, 2020 (¶ 79), and that management acted on January 14, 2021 "within hours" of her EEO contact (¶¶ 34, 76). It pleads the response to each protected act in hours and days, not months (Part III.A).

Second, the Motion says the Complaint does not meet "the standard for a hostile work environment, much less the high bar for a claim of constructive discharge" (Counts II and III) (id. at 2). It asks the Court to decide at the pleading stage what the Fourth Circuit treats as a question of fact. The Complaint alleges fifteen months of supervisor conduct. The Motion's own authority, *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022), held comparable allegations sufficient when it vacated a Rule 12(b)(6) dismissal of race-based and retaliatory hostile-environment claims (Parts III.B–C).

Third, the Motion says the Complaint pleads no facts suggesting that the challenged decisions were motivated by race or national origin (Count IV) (id. at 2). The adverse-action standard it applies is a "significant change in employment status" (id. at 9). The Supreme Court set aside that standard in *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). The Fourth Circuit has since held its own precedent abrogated. *Herkert v. Bisignano*, 151 F.4th 157, 164 (4th Cir. 2025). The Motion cites neither case. The inference is pleaded through named comparators and the decisionmakers' own sworn classifications of her (¶¶ 39, 43, 101, 119; Part III.D).

Fourth, the Motion says that grievances with the EEO process are "not cognizable under Title VII" (id. at 2). The Complaint pleads no such claim; the paragraphs concerning the administrative process are pleaded as evidence, and no count depends on them (Part III.A).

Fifth, the Motion says that "many" claims are time-barred because conduct before November 30, 2020 was not timely exhausted (id. at 1–2, 7–8). This Court measures the exhausted scope by what the agency's EEO office accepted. *Guillen v. Esper*, No. 1:19-cv-1206, Dkt. 37 at 19 n.29 (E.D. Va. July 13, 2020). The Complaint's own exhibits show that the Agency accepted, and the EEOC decided, a single hostile-work-environment claim covering the whole period (Dkt. 1-1 at 9–10, 18, PageID# 86–87, 95). Count II is one environment with acts inside the filing period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Counts I and III rest on 2021 events. No count depends on an earlier act (Part IV).

The Motion's memorandum (Dkt. 26) argues these grounds in reverse count order, taking Count IV (disparate treatment) first (id. at 8) and reaching Count I (retaliation) — the count that rests on the Agency's own "Per Se Violation" finding — last (id. at 20–27). This opposition follows the order of the Complaint, and under each count states the governing standard, the facts pleaded, and then the Motion's contentions. The Motion also characterizes the Complaint rather than engaging its paragraphs (id. at 1): it calls the Complaint "conclusory" but never identifies a paragraph that states a conclusion rather than a dated fact, and the paragraphs it does cite (¶¶ 23–24, 29, 32–39, 72, 119) plead actors, dates, documents, and quotations.

Plaintiff asks that the Motion be denied in its entirety. If the Court finds any count insufficiently pleaded, Plaintiff asks that it be dismissed without prejudice and with leave to amend. Plaintiff further asks that the Motion be decided on the papers.

This opposition proceeds as follows. Part I states the standard and the Complaint's compliance with Rules 8 through 10. Part II sets out the pleaded facts with their pages. Part III takes the four counts in the Complaint's order. Part IV answers the exhaustion argument. Parts V and VI

address the materials before the Court and Plaintiff's Rule 56 motion (Dkt. 14). Part VII states the relief requested and notes the accompanying proposed order.

**I. The Standard: Plausibility Under Rules 8 Through 10, Not a Prima Facie Case**

The Motion asks the Court to dismiss the Complaint under Rule 12(b)(6). The governing standard is plausibility, not proof of a prima facie case. A complaint survives a Rule 12(b)(6) motion if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court draws all reasonable inferences in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). A claim proceeds "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. A court may not dismiss an adequately pleaded claim on a prediction that the plaintiff will not prove it. Id. at 563–64 n.8. The plaintiff "need not demonstrate that her right to relief is probable or that alternative explanations are less likely" — "[i]f her explanation is plausible, her complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation." *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).

An employment-discrimination complaint need not plead a prima facie case. The prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002); *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015). "[D]iscrimination claims are particularly vulnerable to premature dismissal because civil rights plaintiffs often plead facts that are consistent with both legal and illegal behavior." *Woods v. City of Greensboro*, 855 F.3d 639, 652 (4th Cir. 2017). The question is whether an "obvious alternative explanation" for the conduct renders the allegations implausible. Id. at 649 (quoting *Iqbal*, 556 U.S. at 682).

Defendant's own authority states the rule: the Court "looks to the elements of a prima facie case but does not require proof of the elements, only plausibility." *Robinson v. Loudoun Cnty. Pub. Schs.*, No. 1:16-cv-1604, Dkt. 19 at 5 (E.D. Va. Aug. 18, 2017). The Fourth Circuit has applied the same rule. At the motion-to-dismiss stage, "a plaintiff need not establish a prima facie case." *Johnson v. Baltimore City*, 163 F.4th 808, 819 (4th Cir. 2026) (reversing a Rule 12(b)(6) dismissal). A district court "erred in requiring Holloway to plead facts establishing a prima facie case." *Holloway v. Maryland*, 32 F.4th 293, 298–99 (4th Cir. 2022). There is "no requirement that the complaint contain" prima facie facts, and "no requirement that the complaint contain facts rebutting any legitimate, nondiscriminatory reason." *Barbour v. Garland*, 105 F.4th 579 (4th Cir. 2024) (No. 22-1815, slip op. at 20) (reversing a Rule 12(b)(6) dismissal of a Title VII retaliation claim from this District). A pro se pleading is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

The cases the Motion leads with were decided on complaints that pleaded conclusions and nothing else. In *McCleary-Evans* the plaintiff "repeatedly alleged" that the decisionmakers were biased but "alleged no factual basis" for it, so that "[o]nly speculation can fill the gaps in her complaint." 780 F.3d at 585–86. In *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), the comparator was named in one sentence with no fact showing he was similarly situated. This Complaint pleads the opposite kind of record: the actors' own e-mails and sworn statements, dated personnel instruments, the investigator's finding, and named comparators.

The Complaint meets the pleading rules in form as well as substance. Rule 8(a)(2) asks for "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) asks for allegations that are "simple, concise, and direct," with "[n]o technical form" required. Rule 8(e) directs that pleadings "be construed so as to do justice." Rule 10(b) requires numbered

paragraphs, "each limited as far as practicable to a single set of circumstances," and separate counts. Rule 10(c) makes attached exhibits part of the pleading. The Complaint is 128 numbered paragraphs in a dated chronology. It has four separately stated counts, each identifying the paragraphs that support it, and three exhibits on the administrative chronology.

The Motion does not engage these requirements. Its objection is to substance, stated as characterization (Dkt. 26 at 1). That characterization neither displaces the Complaint's compliance with Rules 8 and 10 nor converts dated, actor-specific allegations into conclusions. Rule 9 cuts the other way from the Motion's demand for facts "suggesting" intent: "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The rule "merely excuses a party from pleading discriminatory intent under an elevated pleading standard." *Iqbal*, 556 U.S. at 686–87. This Complaint pleads intent not generally but through the actors' own words (Part II, facts 3, 8, 11, 12). Rule 9(f) makes "[a]n allegation of time or place" material. The Complaint pleads both throughout. The Motion's "undated" contention is answered in Part III.A.

The formal compliance just described is not abstract. The Complaint's 128 numbered paragraphs, dated chronology, and attached exhibits are the vehicle for a specific set of facts drawn from the Agency's own records. Those facts, and the pages that support them, follow.

## II. The Facts the Complaint Pleads, with the Agency's Own Pages

Thirteen pleaded facts carry the four counts. Each rests on a document the Agency wrote or released in its Report of Investigation ("ROI"). The Complaint relies on the ROI throughout (¶¶ 7–8, 57–58) and cites it by page (¶¶ 27, 39, 41, 57, 72(f), 74, 119). A document "integral to the complaint and authentic" may be considered on a Rule 12(b)(6) motion without converting it into one for summary judgment. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164, 166 (4th Cir. 2016). Most of the pages cited below are already on the docket: they were filed as excerpts with

Plaintiff's pending motion for partial summary judgment (Dkt. 15-2), where each carries a PageID. The Motion does not mention that filing. Appendix A lists, for each fact, the Complaint paragraph, the ROI page, and the docket location.

1. Plaintiff opposed race- and national-origin-based harassment and disparate treatment through her chain of command, Human Resources, and the Agency's Anti-Harassment Program beginning January 24, 2020, and entered the EEO process by notice of intent on January 14, 2021 and informal complaint on January 22, 2021 (¶¶ 6, 28, 70; ROI 384–86, PageID# 230–32; ROI 8, 87, PageID# 199, 203).

2. Supervisor May F. disclosed that protected activity to the Unit front office on February 13, 2020, after front-office management had conveyed that what was discussed within the team "should remain within the team" (¶ 79; ROI 383), and supervisor Anna C. had warned May F. in writing on January 27, 2020 of "allegations of ignoring problems that could potentially become legal issues" (ROI 1602–03, PageID# 367–68).

3. On August 17, 2020, May F. e-mailed the front office asking it to "advise the next course of action in terms of termination of [Plaintiff's] employment," with performance characterizations "that had never been documented, formally addressed, or communicated to Plaintiff" (¶ 32; ROI 1027–28, PageID# 309–10). On September 4, 2020, management issued a formal referral "compelling" her to a "psychological consultation" and demanded a medical-records release on the spot (¶ 32; ROI 1040–41, PageID# 315–16).

4. On October 26, 2020, within ten working hours of the decision in Plaintiff's favor on her performance-report rebuttal, May F. reversed a previously approved teaching assignment and assigned Plaintiff the same course level for a fourth consecutive rotation over her written objection (¶¶ 33, 98(m); ROI 1394, PageID# 342). On November 4, 2020, school head Jacqueline L. and

Michael R., then a department chief outside Plaintiff's chain, instructed her supervisors on "the application of KJEs, AWP, and possible PIP" as "a sequential termination mechanism" (¶¶ 33, 109(b); ROI 1391–92, PageID# 339–40; ROI 1967, PageID# 398). A 90-day Advanced Work Plan ("AWP") with customized expectations followed on December 3, 2020, with "no prior documented performance deficiency" behind it; it was rescinded on December 18, 2020 ("[w]e are not putting in place the AWP"), "but the records were preserved and used as the predicate for subsequent adverse actions" (¶ 34; ROI 560–64; ROI 2050, 2053, PageID# 414, 417).

5. On January 14, 2021, "within hours" of Plaintiff's notice of intent to file, Michael R. briefed Jacqueline L. and "formulated a plan with May F. and Sondes D.," and management disseminated her protected activity in "at least ten (10) separate emails" (¶¶ 34, 76).

6. On January 22, 2021, the day Plaintiff filed her informal complaint, May F. distributed to the front office a "fabricated 'Performance Timeline'" backdated to August 2020, and coworker Huey L. accompanied supervisor Sondes D. in surveillance outside Plaintiff's workspace (¶¶ 29, 34, 76; ROI 1302–03, PageID# 334–35). On or about January 25, 2021, new Key Job Elements were entered in Plaintiff's record, starting the ninety-day window after which a "not meeting expectations" close-out and a PIP would become available (¶¶ 34, 109(d)).

7. On January 26, 2021, Sondes D. forwarded Plaintiff's EEO disclosures to Michael R., by then the Unit's chief operating officer, who on January 27 routed them to Security with a referral "directly tied to Plaintiff's protected EEO activity" (¶¶ 23, 72(a); ROI 1820, PageID# 392; ROI 1497, PageID# 356).

8. From March 8 through April 7, 2021, the Agency's Office of General Counsel ("OGC") guided May F. and Michael R. on PIP implementation and on restricting Plaintiff's official time for EEO participation — no official time was granted from January through April 2021, and her EEO-

preparation absences were charged to annual leave (¶ 75; ROI 641, 644–45, 648–49; ROI 2124–25); May F. threatened a PIP on March 25 and April 7; and on April 7, 2021, Michael R. authorized in writing a close-out performance report "triggering a PIP 'now,'" stating there was "[n]o need to wait for fresh episodes" (¶¶ 34, 75, 109(e); ROI 2148–55, PageID# 438–45; ROI 2108; ROI 1976, PageID# 399; ROI 2144–45, PageID# 436–37; ROI 1981).

9. Plaintiff's medical leave was denied on October 29, 2020 as "lacking team spirit," and delayed again in January 2021, while far longer leave was approved for others (¶¶ 37–38, 80; ROI 518–19, PageID# 259–60; ROI 622, 627, PageID# 274, 277).

10. Plaintiff resigned on April 13, effective April 16, 2021, two days after an acute medical episode and six days after Michael R.'s April 7 authorization to initiate the close-out performance report that would trigger a PIP; on April 13, Human Resources transmitted the resignation instructions "while the PSR/PIP process was underway" (¶¶ 34, 37, 109(f), 113), and the Agency's own record of the resignation states that she was "being retaliated against" and "being 'forced' out" (ROI 1760–61, PageID# 385–86). After her departure, May F. asked on April 22 how to activate the "not meeting expectations" option and, the same day, inquired about revoking Plaintiff's security clearance (¶¶ 72(c), 73, 109(g)–(h); ROI 2096, PageID# 429); the close-out issued April 30, 2021, triggering the PIP in her record (¶¶ 34–36, 98(o), 113; ROI 2092–96, PageID# 425–29), with the consequences Agency policy attaches to a PIP (¶ 36; ROI 929–30, PageID# 296–97).

11. On June 29–30, 2021, May F. and Sondes D. sent twenty-one ex parte e-mails to the Agency official adjudicating Plaintiff's performance-report rebuttal, one linking her EEO complaint to a performance "milestone" as "non-professional language" — conduct the Agency's own EEO investigator recorded as a "Per Se Violation" (¶¶ 27, 72(b), 74; ROI 52, PageID# 202; ROI 2055, PageID# 419).

12. May F. applied to Plaintiff a provincial-origin label that "reclassified her as Chinese" and denied her pleaded identity (¶ 29), and used it during the EEO proceedings (¶ 30); five supervisors and coworkers, in their sworn statements to the Agency's investigator, conflated her identity with "Chinese" (¶ 101; ROI 966, PageID# 304; ROI 965, 1584), while May F. and Huey L. identified themselves as "Hakka/Mainland Chinese" and "Taiwanese Chinese" (¶ 118; ROI 9, 2184), and May F.'s evaluations and communications reflect an expectation that Plaintiff, "as an Asian American employee, should be 'submissive'" (¶ 121). SJ, a comparator in the same unit, of the same national origin, with no EEO activity, was favored in overtime and awards (¶¶ 39, 98(c), 119; ROI 52–53, 549–50, 1436, 1439–41), and the team award went to comparators Huey L., SJ, and NS (¶ 43; ROI 1436, 1439–40).

13. Coworker Huey L. sent Plaintiff a late-night message on July 30, 2020 — "Don't get yourself hurt" — and disrupted her class on December 10, 2020 (¶¶ 98(g)–(h)); on March 29, 2021, Huey L. circulated to school leadership a compilation asserting that Plaintiff had "missed more than 80% of the total meetings," covering periods when Plaintiff was on approved leave, and the next day Michael R. adopted it in writing as showing Plaintiff's "go-it-alone approach" (¶¶ 98(i), 100; ROI 1541–42, 1546, PageID# 362–63, 366).

These thirteen allegations are not conclusions. Each is dated, attributed to a named actor, and drawn from the Agency's own records — its Report of Investigation, its officials' sworn statements, its personnel instruments, and its investigator's findings. On a Rule 12(b)(6) motion, they are accepted as true. Where the Motion calls one of them "conclusory," the answer is the paragraph itself and the record page it cites (Appendix A). The Complaint does not ask the Court to infer these facts; it pleads them.

## III. Each Count Pleads Its Elements with Dated Facts

### A. Count I pleads protected activity, knowledge in the officials' own writings, materially adverse actions, and causation measured in days.

A retaliation claim requires protected activity, a materially adverse action, and a causal connection. *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018). An action is materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). *Muldrow* left that standard "unchanged." *Herkert*, 151 F.4th at 166. Count I is pleaded under 42 U.S.C. § 2000e-16(a). That provision requires that "[a]ll personnel actions" be "made free from any discrimination." The Fourth Circuit has recognized that this language "on its face covers a broader range of activity," so that "many decisions involving human resources constitute personnel actions despite falling short of being 'ultimate employment decisions.'" *Caldwell v. Johnson*, 289 F. App'x 579, 589 (4th Cir. 2008); see *Babb v. Wilkie*, 589 U.S. 399 (2020).

Causation is pleaded by knowledge and "very close" temporal proximity. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001); *Strothers*, 895 F.3d at 335–36. It may also be pleaded by "factual allegations [that] support a plausible inference that the employer [acted] because of her protected activity," with "intervening events" able to "bridge what would otherwise be a prohibitively long temporal gap." *Barbour*, No. 22-1815, slip op. at 21, 27. The Complaint pleads all three elements with dates and the officials' own writings.

*Protected activity.* The Complaint pleads both forms. Plaintiff's opposition to race- and national-origin-based harassment began January 24, 2020. It continued "through her chain of command, Human Resources, and the Agency's Anti-Harassment Program throughout 2020 and into 2021." Her participation in the EEO process began with the January 14, 2021 notice of intent and the January 22, 2021 informal complaint (¶¶ 6, 28, 70). Opposition activity "encompasses

utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). A complaint to the employer is protected when the employee holds "an objectively reasonable belief … that a Title VII violation has happened or is in progress." *Strothers*, 895 F.3d at 327; *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282–84 (4th Cir. 2015) (en banc). What Plaintiff opposed is pleaded by name: coworker Huey L.'s "sustained pattern of discriminatory harassment," reflecting "the ethnic hierarchy underlying" the supervisor's provincial-origin label, and the disparate treatment she reported through her chain of command (¶¶ 6, 29).

*Knowledge*. The Complaint pleads knowledge to the day, beginning with the opposition itself. Plaintiff's opposition from January 24, 2020 was made "through her chain of command" (¶¶ 6, 28, 70) — that is, to the supervisors who then acted. Paragraph 79 pleads that "on February 13, 2020 May F. disclosed Plaintiff's protected EEO activity to the Unit front office management." Paragraph 32 pleads that the August 17, 2020 termination e-mail and the September 4 referral "followed Plaintiff's protected opposition to discrimination in late 2019 and January 2020." Paragraph 34 pleads that "on January 14, 2021, within hours of Plaintiff notifying the OEEO of her intent to file a complaint, Michael R. briefed Jacqueline L. and formulated a plan with May F. and Sondes D." Paragraph 76 pleads that the same day management "disseminated Plaintiff's protected EEO activity … [in] at least ten (10) separate emails." Paragraph 23 pleads the January 26, 2021 forwarding of her EEO disclosures to Michael R. Each allegation names the recipient, the date, and the recipient's next act, from the officials' own e-mails and statements (¶¶ 27, 74, 76, 79; ROI 52).

*Materially adverse actions*. The Complaint pleads these changes to Plaintiff's employment record after the protected activity: the "fabricated 'Performance Timeline'" entered into her record

the day of her informal complaint (¶¶ 34, 76); customized Key Job Expectations entered into the appraisal system "around January 25, 2021," starting the 90-day clock (¶¶ 34, 109(d)); the PIP, threatened in writing on March 25 and April 7 and "formally trigger[ed]" in her close-out report after she left (¶¶ 34, 98(o)). The Agency's policy attaches specific consequences to a PIP: ineligibility for "performance recognition, promotions, Quality Step Increases, Exceptional Performance Awards, Within-Grade Increases, bonuses, and the right to apply for new assignments" (¶ 36). It also pleads twenty-one ex parte e-mails to the official adjudicating her rebuttal, one logging her EEO complaint as "non-professional language" (¶¶ 72(b), 74).

The Complaint pleads these changes to the terms of her employment: the denial of all official time for EEO preparation from January through April 2021 on counsel's guidance (¶ 75); leave for medical care denied and delayed (¶¶ 38, 80); the dissemination of her EEO complaint by her supervisor to a manager outside her chain of command, Michael R., and by Michael R. to Security (¶¶ 23, 72(a)); and, six days after she resigned, a supervisor's inquiry about revoking her clearance (¶¶ 24, 72(c)). Title VII reaches the inquiry because "former employees are included within § 704(a)'s coverage." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). Plaintiff does not ask the Court to review any security determination. The acts pleaded are her supervisors' dissemination of her protected activity and their post-separation pursuit of her. Each is a change in a record or a term of employment, and any one of them "well might" dissuade a reasonable worker.

*Causation.* The Complaint pleads the interval between each protected act and the response to it, and the intervals are hours and days: the January 14, 2021 notice of intent and the same-day plan (¶ 34); the January 22 informal complaint and the same-day backdated timeline and surveillance (¶¶ 29, 34, 76); the January 26 disclosure and the January 27 referral (¶ 23); the April 9

formal complaint, the April 13 resignation instructions, and the April 22 post-separation inquiries (¶¶ 24, 109(f)–(h)).

It also pleads the departures from the Agency's own procedures. The AWP was issued with no documented deficiency (¶ 34). Leave was denied contrary to the Agency's own practice (¶¶ 38, 80). The performance process was run "in violation of ICD 651" (¶ 109(c)). This Court has held that such a departure, when coupled with proximity, "creates a plausible inference that the performance rating was pretext for retaliating against Plaintiff." *Robinson v. Loudoun*, Dkt. 19 at 14 (citing *Mohammed v. Cent. Driving Mini Storage, Inc.*, 128 F. Supp. 3d 932, 951 (E.D. Va. 2015) (inconsistent justifications supported causation "notwithstanding lack of temporal proximity")). It also pleads a direct route: the Agency investigator's "Per Se Violation" finding that supervisors linked her EEO complaint to her performance and disclosed her EEO activity to the adjudicator of her performance rebuttal (¶¶ 27, 74; ROI 52). That finding is pleaded as the mechanism by which supervisory animus reached the formal decisionmaker. See *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011).

*The Motion.* On knowledge, the Motion places the earliest date on which "relevant managers allegedly learned of her protected activity" at January 26, 2021 (Dkt. 26 at 20, citing ¶¶ 23, 72). It states that Plaintiff "does not allege when any individual supervisor learned about her pre-January 2021 protected activity" (id. at 5; id. at 21–22 n.4). The Complaint pleads that knowledge a year earlier. The opposition was made to the supervisors themselves from January 24, 2020 (¶¶ 6, 28, 70), and May F. disclosed it to the front office on February 13, 2020 (¶ 79) — paragraphs the Motion does not cite. January 26, 2021 is one of several dated disclosures the Complaint pleads (¶¶ 23, 34, 76, 79). That is the distinction *Seabrook v. Driscoll*, 148 F.4th 264, 273 & n.9 (4th Cir. 2025), draws: the plaintiff there alleged only that the official "is made aware of

all EEO activity within the command"; here the Complaint names the recipients, the dates, and what each did next.

On adverse action, the Complaint pleads the PIP as triggered, not abandoned. The close-out report issued April 30, 2021 "formally trigger[ed]" it in her record. Agency policy attaches to it the consequences listed above (¶¶ 34, 36, 98(o)). The Motion's statement that "Plaintiff concedes" the PIP "was not implemented" (Dkt. 26 at 4, 22) cites those paragraphs. Its summary of Count I (id. at 22) omits ¶¶ 36, 72(b), 75, and 76. Those paragraphs plead the policy consequences, the ex parte e-mails, the official-time denial, and the January 14 dissemination. The three 2020 acts that footnote 5 sets aside as preceding "any allegation of management knowledge" (id. at 23 n.5) follow the January 2020 opposition made to her supervisors and the February 13, 2020 disclosure (¶¶ 6, 70, 79). Each is pleaded with its content (¶¶ 33–34): a reversal within hours of a favorable rebuttal decision, a "sequential termination mechanism," and an AWP with no documented deficiency.

The authorities the Motion offers on this element supply no pleading standard that the Complaint fails. Each was decided on a summary-judgment record, or sustained the retaliation claim before it. *Wonasue v. University of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480 (D. Md. 2013), was an unopposed summary-judgment ruling that still denied summary judgment on a retaliation count. *Caleca v. Burns*, No. 1:23-cv-1184, ECF 42 at 15 (E.D. Va. Sept. 20, 2024), cited for the same list, sustained a retaliation claim at the pleading stage "as to his failing PIP rating" on three weeks' proximity. *Dawson v. Rumsfeld*, No. 1:05-cv-1270, 2006 WL 325867 (E.D. Va. Feb. 8, 2006), granted summary judgment on a disparate-treatment claim under the "terms, conditions, or benefits" standard of *Von Gunten v. Maryland*, 243 F.3d 858 (4th Cir. 2001). *Burlington Northern* rejected that standard for retaliation claims four months later, 548 U.S. at 60–67.

On causation, the Complaint pleads that the plan to end Plaintiff's employment followed her protected activity and escalated at each EEO step. The August 17, 2020 e-mail came after the January 2020 opposition, which May F. had disclosed by February 13, 2020 (¶¶ 32, 79). The plan then advanced at each EEO step, through the April 7, 2021 authorization to proceed "now," with "[n]o need to wait for fresh episodes" (¶¶ 34, 76, 109(d)–(e); Part II, facts 5–8). The Motion invokes *Breeden*'s rule that an employer "proceeding along lines previously contemplated" before it learned of protected activity shows no causation, 532 U.S. at 272. It does so on the premise that the plan began in August 2020 before any official knew of protected activity (Dkt. 26 at 25–26). The Complaint pleads that the supervisors knew of the opposition as early as January 24, 2020, nearly seven months earlier (¶¶ 6, 70, 79). An employer that accelerates a contemplated action in step with the employee's EEO filings is not "proceeding along lines previously contemplated." The acceleration is the evidence. *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006), was a summary-judgment ruling under USERRA. The actions there "began before her protected activity"; here they began after it. The "two months" rule the Motion takes from *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025), is prefaced by the words "without other evidence of causation." *Barnhill* recognized causation shown through "a pervasive sequence of intervening events." The Complaint pleads both the proximity and the sequence.

*The administrative-process allegations.* Title VII does not create a cause of action for the mishandling of an EEO complaint. The Complaint pleads none. The deposition-cost and document-access allegations (¶¶ 25–26, 72(d)–(e)) and the allegations concerning the administrative proceedings (¶¶ 40–52, 63–68, 84–94) are pleaded "in the alternative, as evidence" (¶ 72(d)). No count depends on them, and Plaintiff does not defend them as independent claims. Two matters the Motion files under that heading (Dkt. 26 at 24–25) are employment facts, not

processing complaints: (i) The denial of official time for EEO participation from January through April 2021 (¶¶ 75, 99) was a decision by her supervisors, on counsel's guidance, during her employment. (ii) The supervisors' sworn descriptions of her as "Chinese" (¶ 101) are statements of the decisionmakers' own perception of her race and origin, pleaded as evidence under Count IV.

**B. Count II pleads fifteen months of supervisor conduct that *Laurent-Workman* holds sufficient at the pleading stage.**

A hostile-environment claim requires unwelcome conduct, based on a protected characteristic or on protected activity, sufficiently severe or pervasive to alter the conditions of employment, and imputable to the employer. *Boyer-Liberto*, 786 F.3d at 277. For a retaliatory environment, the conduct must be "so severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination." *Laurent-Workman*, 54 F.4th at 217. Whether conduct is severe or pervasive is judged "by looking at all the circumstances." Those circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The court "must" consider that totality. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 224, 226 (4th Cir. 2016) (reversing summary judgment). In this Circuit, "whether harassment was sufficiently severe or pervasive is quintessentially a question of fact," *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010).

At the pleading stage, the Fourth Circuit in *Laurent-Workman* vacated the Rule 12(b)(6) dismissal of both a race-based and a retaliatory hostile-environment claim: "Although any one of these allegations does not amount to much when considered in isolation, the consistent (even if not constant) conduct" pleaded "plausibly qualifies." "Together, the allegations tell a multi-act story of undermining, gaslighting, and disruption." 54 F.4th at 218. The court reached the same result in

*Parker v. Reema Consulting Services, Inc.*, 915 F.3d 297, 303, 305 (4th Cir. 2019). It reversed a Rule 12(b)(6) dismissal because the complaint "adequately alleges the severe or pervasive element" through a supervisor's conduct over time. The en banc court has held that an "isolated incident" of harassment can "amount to discriminatory changes in the terms and conditions of employment" "if that incident is 'extremely serious.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). A supervisor's harassment carries a "particular threatening character," so that "a reasonable jury could find" a supervisor's two uses of a racial epithet "severe enough to engender a hostile work environment," id. at 280.

*The conduct pleaded.* Count II pleads fifteen components (¶ 98(a)–(o)), by supervisors: a supervisor's written solicitation of Plaintiff's termination with undocumented accusations (¶¶ 32, 98(k)); a compelled psychological referral with a demanded records release and five follow-ups (¶¶ 32, 98(j)); the reversal of an approved assignment within hours of her favorable rebuttal decision (¶ 33); a 90-day AWP with customized expectations and no documented deficiency (¶¶ 34, 98(b)); a backdated performance timeline fabricated and distributed the day of her EEO complaint (¶¶ 34, 76); surveillance outside her workspace that day (¶ 29); the routing of her EEO disclosures to Security (¶¶ 23, 98(e)); and repeated PIP threats and the written "now" authorization (¶ 34).

It pleads the denial of leave for medical care while she carried the unit's heaviest load, and the denial of official time for EEO participation (¶¶ 37–38, 98(l)–(m)); the ex parte communications to her rebuttal adjudicator (¶ 98(d)). It also pleads management's adoption of a coworker's conduct: Huey L.'s late-night message, "Don't get yourself hurt," the day after Plaintiff reported Huey L.'s harassment, followed by Huey L.'s disruption of Plaintiff's class and the supervisors' adoption of Huey L.'s "false reports as factual predicates" for the performance narrative (¶¶ 29, 98(g)–(i)). Each *Harris* factor is pleaded, and the interference is pleaded

physically: a serious condition that worsened under denied leave to the acute episode of April 12, 2021 (¶¶ 37, 98(n)).

*Based on a protected characteristic, and on protected activity.* The Complaint pleads the connection to race (Taiwanese, of Hoklo ancestry) and national origin (Taiwan) (¶¶ 18–19) at ¶¶ 29–31, 96, 101, 118, and 121: a supervisor's label that "reclassified her as Chinese" (¶ 29); its use during the EEO proceedings (¶ 30); the sworn statements of five supervisors and coworkers describing her as "simply 'Chinese'" or as part of the "Chinese team" (¶ 101); the pleaded ethnic hierarchy between the supervisors' and coworker's self-identification and hers (¶ 118); and a supervisor's expectation that she, "as an Asian American employee, should be 'submissive'" (¶ 121). The label was used in the EEO proceedings themselves. The officials' sworn statements adopted its premise, and the conduct escalated for fifteen months. The environment is also pleaded as retaliatory (¶¶ 96, 99). On that theory, the "based on" element is the protected activity to which each January 2021 act responded (¶¶ 34, 76).

*Imputable to the employer.* The actors are supervisors — May F., Sondes D., Michael R., and Jacqueline L. — whose conduct is imputed to the employer. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). The coworker's conduct was reported, "[m]anagement was on notice … yet took no remedial action." The supervisors also adopted the coworker's reports "as factual predicates" for the performance narrative (¶ 29). See *Staub*, 562 U.S. at 422.

*The Motion.* The fifteen components pleaded at ¶ 98 are not "the ordinary tribulations of the workplace," the phrase the Motion applies to eight of them (Dkt. 26 at 17). In *Faragher*, 524 U.S. at 788, the phrase describes "the sporadic use of abusive language, gender-related jokes, and occasional teasing," while preserving "isolated incidents (unless extremely serious)." The passage the Motion quotes from *Boyer-Liberto* — a "single offensive utterance" without "significant

repetition or an escalation" (Dkt. 26 at 17, quoting 786 F.3d at 284) — describes what the Complaint pleads did not happen here. The Motion cites *Laurent-Workman* for its standard (id. at 16–17, 22) without that case's result. *Barnhill*, which the Motion also cites, describes *Laurent-Workman* as a case in which the plaintiff "adequately pled" a retaliatory environment from a supervisor who became "even more hostile" after her complaints. 138 F.4th at 140. Every case the Motion cites at pages 17 through 18 — *Holloway*, *Buchhagen*, *McNeal*, *Roesinger*, *McIver* — affirmed a judgment on a developed record or dismissed a pleading of coworker friction. None involved a supervisor-driven, fifteen-month course of personnel instruments, security referral, and ex parte advocacy. The Motion does not address imputation.

**C. Count III pleads conditions a reasonable person would find intolerable: a written authorization to proceed with her termination "now."**

A constructive-discharge claim requires that the discrimination or retaliation "reach[ed] a level at which a reasonable person in the employee's position would have felt compelled to resign," and that the employee resigned in response. *Green v. Brennan*, 578 U.S. 547, 555 (2016). It is a "compound claim" that "entails something more" than a hostile environment. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). Where the employee "quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation," the employer's affirmative defense is unavailable. Id. at 134; see id. at 148. After *Green*, the Fourth Circuit no longer requires proof that the employer intended to force the resignation. *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017).

*The sequence pleaded.* By April 7, 2021, Plaintiff had been the subject of several actions: a written request for her termination (August 17, 2020); a compelled psychological referral; an AWP issued and rescinded with its records preserved "as the predicate for subsequent adverse actions;" a backdated performance timeline; the routing of her EEO complaint to Security; and repeated PIP

threats. On April 7, the Unit's chief operating officer authorized May F. in writing to initiate the close-out that "would trigger a PIP," instructing May F. to proceed "now" and that there was "[n]o need to wait for fresh episodes" (¶¶ 34, 109(a)–(e)). Under the Agency's written policy the PIP would have barred her from performance recognition, promotion, step increases, awards, and "the right to apply for new assignments or request a change in career service" (¶ 36).

On April 12, she suffered an acute medical episode after months of denied leave. On April 13, Human Resources transmitted the resignation instructions "while the PSR/PIP process was underway." She resigned effective April 16 (¶¶ 34, 37, 109(f), 113). Six days later, May F. was asking how to activate the "not meeting expectations" option, and the close-out was then issued (¶¶ 34, 109(g)). A reasonable employee who has read, in her employer's own words, that a plan to end her employment will proceed "now" without waiting for a reason would feel compelled to resign.

*The Motion.* Its only argument is that Count III fails because Count II does (Dkt. 26 at 18–20). Count III stands with Count II for the reasons above. The intolerability is pleaded independently. The cases the Motion cites (*James*, *Williams*, *Matvia*, *Munday*, *Carter*) were decided on summary-judgment or trial records of criticism, ostracism, or unpleasant assignments, several under the "deliberateness" element *Green* eliminated. None involved a written authorization to proceed with a termination instrument "now." *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018), cited for the "more stringent" standard, reversed summary judgment on the hostile-environment claims before it because "a jury — not the court — should decide," id. at 160. Whether the resignation was voluntary is for the factfinder.

**D. Count IV pleads *Muldrow* adverse actions and an inference of discrimination.**

*Adverse action after* Muldrow. A Title VII plaintiff "must show some harm respecting an identifiable term or condition of employment" but "need not show that the injury satisfies a

significance test"; "[w]hat the transferee does not have to show … is that the harm incurred was 'significant.'" *Muldrow*, 601 U.S. at 350, 354–55. The Fourth Circuit has since recognized that "the Supreme Court abrogated our decision in *James*," so that "it is enough that the plaintiff has suffered 'some disadvantageous change in an employment term or condition.'" *Herkert*, 151 F.4th at 164; see *Barnhill*, 138 F.4th at 129 n.6 (same). In the federal sector, moreover, § 2000e-16(a) reaches "[a]ll personnel actions." *Babb,* 589 U.S. 399; *Caldwell,* 289 F. App'x at 589.

*The actions pleaded.* Under either formulation, the actions Count IV pleads qualify. The allocation of overtime and of monetary awards to comparators and not to Plaintiff (¶¶ 39, 43, 98(c), (m), 119), and her exclusion from the December 8, 2020 team award (¶ 43; Prayer (e)(ii)), are decisions about pay. The denial and delay of leave (¶¶ 37–38) is a term of employment. It is pleaded with the October 29, 2020 denial, its stated reason, and the January 2021 delay by date (¶ 38). The 90-day AWP with customized expectations (¶ 34) is a corrective action and a change in working conditions by any reading. The August 2020 termination request and the compelled psychological referral (¶ 32) are the pleaded beginning of the same course.

*The comparators.* SJ worked in the same unit under the same supervisors, shared Plaintiff's national origin, had no EEO activity, and "was favored in overtime assignments and in monetary awards" "despite equivalent or inferior qualifications," with the record pages identified (¶¶ 39, 119; ROI 52–53, 549–50, 1436, 1439–41). Coworker Huey L. shared Plaintiff's national origin but not her pleaded racial identity: Huey L. self-identified as "Taiwanese Chinese, i.e., Chinese who are born in Taiwan," while Plaintiff identified as Hoklo Taiwanese American (¶ 118; ROI 2184, 217). Huey L. is pleaded as a comparator for the same award (¶ 43), and the page the Complaint cites records that overtime was approved for both SJ and Huey L. (ROI 52; Dkt. 15-6 ¶¶ 281–82). Plaintiff was denied overtime, and the denial was "not applied to non-EEO-active comparators" (¶

98(m)). She was excluded from the December 8, 2020 team award that comparators Huey L., SJ, and NS received (¶ 43; Prayer (e)(ii); Dkt. 15-6 ¶¶ 141, 144). At the pleading stage, the Fourth Circuit requires comparators "similar 'in all relevant respects,'" an analysis that "does not require a perfect one on one fit." The court has reversed a dismissal that demanded more. *Johnson*, 163 F.4th at 817–18; see *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223, 225 (4th Cir. 2019) (reversing summary judgment; comparison "will never involve precisely the same set of work-related offenses"); *Bliss v. Garland*, No. 1:22-cv-563, Dkt. 69 at 13, 15 (E.D. Va. July 19, 2023) (sustaining a disparate-treatment claim on comparators pleaded in "all relevant respects"). The Complaint pleads the unit, the supervisors, the qualifications, the origin, the identity, the EEO status, and the pages.

*The decisionmakers' own classifications of Plaintiff.* The inference does not rest on the comparators alone. The Complaint pleads the decisionmakers' own account of how they classified her. In sworn statements to the Agency's investigator, Anna C. stated "In my mind, she was simply 'Chinese.'" Sondes D. "believed Complainant to be Chinese." May F. described her as part of the "Chinese team" (¶ 101). It pleads May F.'s provincial-origin label for her (¶ 29) and its use during the EEO proceedings of 2021, within the period of the challenged actions (¶ 30), and May F.'s expectation that she, "as an Asian American employee, should be 'submissive'" (¶ 121). Title VII protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). That the actors shared Plaintiff's national origin defeats nothing: "it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group." *Castaneda v. Partida*, 430 U.S. 482, 499–500

(1977); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998). The intra-group theory is pleaded with its basis (¶¶ 117–118). The Motion does not challenge it.

*The procedural departures, in combination.* The Complaint pleads the departures from the Agency's own procedures together with the comparators, the label, the sworn classifications, and the dated sequence. That is the combination this Court has accepted at the pleading stage. *Robinson v. Loudoun*, Dkt. 19 at 14; *Mohammed*, 128 F. Supp. 3d at 951. Whether these facts prove discrimination is for later. Whether they plausibly allege it is the only question now.

*The Motion.* It states the adverse-action element as requiring "a significant change in employment status," citing *Hoyle*, *Holland*, *James*, and *Boone*, and treats *Babb*'s reading of "personnel actions" as "dicta" (Dkt. 26 at 9–10). It cites neither *Muldrow* nor *Herkert*. Defendant has acknowledged the point in this Court: in *Pauper v. Ratcliffe*, No. 1:25-cv-476, Dkt. 18 at 8 (E.D. Va. July 21, 2025), Defendant cited the same *Hoyle* passage and described *James* as "abrogated by *Muldrow v. City of St. Louis*, 601 U.S. 346, 353 & n.1 (2024)," adding that *Muldrow* "shattered this understanding." *Peterson v. West*, 17 F. App'x 199 (4th Cir. 2001) (per curiam), is the Motion's only authority for its "minor disputes over her duties" point. Peterson is a pre-2007 unpublished disposition whose citation is disfavored. 4th Cir. R. 32.1. It affirmed a summary judgment under the "ultimate employment decision" formulation that does not survive *Muldrow*.

On the comparator, *Cosby v. South Carolina Probation, Parole & Pardon Services*, 93 F.4th 707 (4th Cir. 2024), from which the Motion takes its "in all respects" formulation, affirmed a summary judgment. The Motion's statement that "the plaintiff must provide evidence" (Dkt. 26 at 11) is a summary-judgment standard. *Coleman* is distinguishable on the ground the court there gave: the complaint "fail[ed] to establish a plausible basis for believing" the two employees "were actually similarly situated" because it alleged nothing beyond the conclusion. 626 F.3d at 191.

On the inference, the Motion says the Complaint "seems to suggest" the label was used "no later than late 2019" and is therefore remote (Dkt. 26 at 14). Paragraph 28's "no later than late 2019" dates Plaintiff's opposition. Paragraph 30 places the label in the EEO proceedings of 2021. *Rayyan* and *Birkbeck*, cited for "remote" and "stray" remarks, were summary-judgment and post-trial decisions about isolated comments years before the adverse action. A supervisor's label for the plaintiff's ethnic group, used during the proceedings about her treatment, is neither. The procedural departures are pleaded in combination, not "by [themselves]" (Dkt. 26 at 15). *Russell v. Harlow*, 771 F. App'x 206, 207 (4th Cir. 2019), and the decisions in footnote 3 (id. at 15 n.3) are summary-judgment rulings in which the irregularity stood alone. The Complaint does not ask the Court "to take her word for it" (id. at 12) — it cites the Agency's.

**IV. The Exhaustion Argument Fails Under the Governing Rules**

This Court measures the exhausted scope by what the agency's EEO office accepted. *Guillen*, Dkt. 37 at 19 n.29. Exhaustion is "more properly considered under a Rule 12(b)(6) motion." Id. at 16 & n.24. Although the start of the hostile environment "was more than 45 days before" the counselor contact, "the EEO Office nonetheless accepted plaintiff's claim of a hostile work environment" for that period, and "[a]ccordingly, that claim is properly before the Court." Id. at 19 n.29. The 45-day period is a waivable limitations defense, not a bar. Title VII's charge-filing requirements are not jurisdictional. *Fort Bend County v. Davis*, 587 U.S. 541 (2019). The period is "like a statute of limitations, … subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990). The regulation says so of its own limits, requires the agency to extend the period in stated circumstances, and requires it to dismiss any untimely matter at the outset, 29 C.F.R. §§ 1614.604(c), 1614.105(a)(2), 1614.107(a)(2). The Fourth Circuit treats the federal-sector limit as

"in the nature of a statute-of-limitations defense." *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (en banc). A limitations defense is resolved on a Rule 12(b)(6) motion only where "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc).

*Morgan* supplies the timeliness rule for each kind of claim. Discrete acts — "termination, failure to promote, denial of transfer, or refusal to hire" — are separately timed. 536 U.S. at 114. Untimely ones remain "background evidence in support of a timely claim," id. at 113. Hostile-environment claims "are different in kind from discrete acts," id. at 115: "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability," id. at 117.

*What the Complaint pleads.* The Complaint pleads one environment "[b]eginning no later than 2019 and continuing through Plaintiff's forced resignation on April 16, 2021" (¶ 28). Counting forty-five days back from the January 14, 2021 EEO contact (¶ 6), the window opens November 30, 2020: it contains the December 3, 2020 Advanced Work Plan (¶ 34), the December 8, 2020 award (¶ 43), the December 10, 2020 disruption of her class (¶ 98(h)), and every act of 2021. The earlier matters — the harassment "no later than late 2019" (¶ 29), the July 2020 message (¶ 98(g)), the August 2020 termination request (¶ 32), the leave denials (¶¶ 37–38) — are pleaded as components of that environment (¶ 98(a), (g), (k), (l)). Under Counts I and IV, they are pleaded as background (¶¶ 32, 109(a)). No count rests on a pre–November 30, 2020 act alone: Count I's acts are the acts of 2021 (¶ 72(a)–(f)); Count III is the April 2021 resignation (¶ 113); and Count IV's differential treatment in overtime, awards, leave, and performance instruments continued into the window (¶¶ 34, 38, 39, 43, 98(c), (m), 119).

*What the Complaint's exhibits show.* The Agency accepted the whole period, and the EEOC decided it. The regulation required it to dismiss any untimely matter at the outset, 29 C.F.R. § 1614.107(a)(2). The Agency did not. The EEOC decisions, attached as Exhibits B and C and "part of the pleading for all purposes," Fed. R. Civ. P. 10(c), recite that the formal complaint presented a single hostile-work-environment claim of twenty-seven incidents involving, "among other things," the "denial of overtime, denial of awards, … comments about her lacking team spirit, threats to place her on a Performance Improvement Plan, and her alleged involuntary resignation on April 16, 2021" (Dkt. 1-1 at 9–10, PageID# 86–87). The Administrative Judge decided "[t]he issues … as stated at pages 3–7 of the ROI" (Dkt. 1-1 at 18, PageID# 95). On that face, no limitations defense "clearly" appears. A waiver question, if any, awaits a record, which the Motion does not offer.

*The Motion.* It argues that because the EEO contact was January 14, 2021, "any discrete actions occurring before November 30, 2020 … are time-barred," that each incident "stands alone" under *Morgan*, and that "conduct before November 30, 2020" should be "dismissed with prejudice" (Dkt. 26 at 7–8). The rule it takes from *Morgan* is the rule for discrete acts. Count II is a hostile-environment claim with acts inside the window. The matters the Motion lists are pleaded as its components. The Motion asks that "conduct," not a count, be dismissed, and pleaded facts are not dismissed. Its own authorities agree that the period is waivable and that the Agency's handling matters: *Guerrero v. Lynch*, 621 F. App'x 755, 756 (4th Cir. 2015) ("the limitations period may be waived"); *Sydnor v. Fairfax County*, 681 F.3d 591, 594 (4th Cir. 2012) (reversing a dismissal for failure to exhaust; the requirement "should not become a tripwire for hapless plaintiffs"); *Saunders v. Stone*, 758 F. Supp. 1143, 1145 (E.D. Va. 1991) (decided under the former 30-day rule on a motion treated as one for summary judgment, where no equitable circumstances for tolling were

shown; the period "may be extended, or tolled"). None concerns a claim the agency accepted and the EEOC decided. The Motion's own footnote agrees that the Agency's procedural errors bear on the case when "the agency raises a defense that the plaintiff failed to exhaust administrative remedies" (Dkt. 26 at 24–25 n.6, quoting *Nielsen v. Hagel*, 666 F. App'x 225, 231 (4th Cir. 2016)), as this Motion does.

**V. The Materials Before the Court Are the Pleading and the Pages It Relies On**

The Motion attaches nothing and relies on the Complaint alone. The Complaint's Exhibits A–C are part of the pleading, Fed. R. Civ. P. 10(c). The Report of Investigation pages it cites are integral to it and may be considered without conversion. *Goines*, 822 F.3d at 164, 166. The pages cited in Part II are on the docket at Dkt. 15-2 or identified by ROI page. Should the Court consider matter beyond those materials, Rule 12(d) treats the Motion as one for summary judgment, on which "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent." Plaintiff has presented hers (Dkt. 14–16). No conversion is requested.

**VI. Plaintiff's Pending Rule 56 Motion (Dkt. 14–15) Rests on the Same Record**

The Court holds Plaintiff's motion for partial summary judgment on Count I (Dkt. 14–16), filed September 2, 2026 with a 291-paragraph statement of material facts cited to the Agency's own record (Dkt. 15-6). Under the Court's order of September 17, 2026 (Dkt. 20), Defendant's response is due fourteen days after the order ruling on the Motion.

A Rule 12(b)(6) motion asks whether the allegations are plausible. The record already before the Court on Dkt. 14 shows that the Count I allegations the Motion attacks are documented in the Agency's own files. When both parties have moved on the same claim, each motion is considered "separately on its own merits." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.

2003). Plaintiff asks that Dkt. 14 be decided on the papers in the ordinary course after Defendant's response under Dkt. 20.

### VII. Defendant's Motion to Dismiss (Dkt. 25) Should Be Denied

The Complaint pleads each count's elements from the Agency's own records. Exhaustion is complete on the face of the pleading. The standards the Motion applies to Counts I through IV are not the governing ones under Rule 12(b)(6). Plaintiff respectfully asks that the Court deny the Motion (Dkt. 25) in its entirety. Should the Court find any count insufficiently pleaded, Plaintiff asks that dismissal be without prejudice, with leave to amend.

Plaintiff waives oral argument and submits the Motion on the papers (Fed. R. Civ. P. 78(b); Local Civil Rule 7(J)); a proposed order accompanies this opposition.

Respectfully submitted,

Ann D. Yang, Ph.D., Plaintiff, Pro Se
10449 White Granite Drive #37, Oakton, VA 22124
Tel: (703) 755-0206 · Email: anneyang.va@gmail.com
Dated: October 17, 2026

## APPENDIX A — The Thirteen Pleaded Facts and Their Record Pages

ROI pages are pages of the Agency's Report of Investigation, on which the Complaint relies (¶¶ 7–8, 57–58); the parenthetical is the page's PageID# in Exhibit A to Plaintiff's pending motion (Dkt. 15-2); "Dkt. 15-6 ¶¶" are the paragraphs of Plaintiff's statement of material facts that set out the fact from those pages. Pages without a PageID are cited as part of the integral document.

| **Fact (Part II)** | **Compl. ¶¶** | **ROI pages (PageID#)** | **Dkt. 15-6 ¶¶** |
|---|---|---|---|
| 1. Opposition Jan. 24, 2020; EEO contact Jan. 14/22, 2021 | 6, 28, 70 | 384–86 (230–32); 8, 87 (199, 203) | 21–23, 110 |
| 2. Feb. 13, 2020 disclosure; "within the team"; Jan. 27, 2020 warning | 79 | 1602–03 (367–68); 995; 383 | 23(b), 27, 28(i), 29 |
| 3. Aug. 17, 2020 termination e-mail; Sept. 4, 2020 compelled referral | 32, 109(a) | 1027–28 (309–10); 1040–41 (315–16); 424–25 | 48–49, 56, 58, 60 |
| 4. Oct. 26 reassignment; Nov. 4 AWP-to-PIP plan; Dec. 3 AWP; Dec. 18 rescission (2020) | 33, 34, 98(m), 109(b)–(c) | 1394 (342); 1391–92 (339–40); 1967 (398); 560–64; 2050, 2053 (414, 417) | 72, 74, 76–78, 87, 89, 101, 233 |
| 5. Jan. 14, 2021 same-day plan; ten e-mails | 34, 76 | 1481, 1483–85; 1512–13 | 119–21 |
| 6. Jan. 22, 2021 backdated timeline; surveillance; Jan. 25 KJEs | 29, 34, 76, 109(d) | 1302–03 (334–35) | 125, 233 |
| 7. Jan. 26–27, 2021 forwarding and security referral | 23, 72(a) | 1820 (392); 1497 (356) | 127–28 |
| 8. Mar. 8–Apr. 7, 2021 PIP guidance; no official time; "now" authorization | 34, 75, 109(e) | 2148–55 (438–45); 2108; 641, 644–45, 648–49; 2124–25; 1976 (399); 2144–45 (436–37); 1981 | 154, 161, 165, 178–79, 188 |
| 9. Leave denied Oct. 29, 2020; delayed Jan. 2021 | 37–38, 80 | 518–19 (259–60); 1395–96 (343–44); 622, 627 (274, 277) | 84–85, 108 |
| 10. Apr. 13/16, 2021 resignation; Apr. 22 inquiries; Apr. 30 close-out and PIP | 34–37, 72(c), 73, 98(o), 109(f)–(h), 113 | 1760–61 (385–86); 2092–96 (425–29); 929–30 (296–97) | 145, 193, 196, 199, 200, 229 |
| 11. June 29–30, 2021 ex parte e-mails; "Per Se Violation" | 27, 72(b), 74 | 52 (202); 2055 (419) | 206 |
| 12. The label; sworn classifications; self-identifications; "submissive"; the comparators | 29–30, 101, 118, 121; 39, 43, 98(c), (m), 119 | 966 (304), 965; 1584; 9, 2184, 217; 52 (202), 53, 549–50, 1436, 1439–41 | 153(c), 274–75, 279; 41, 95, 141–44, 281–82, 284 |
| 13. Coworker conduct management adopted (2020–21) | 98(g)–(i), 100 | 1542 (363); 1541, 1546 (362, 366) | 182–83 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANN D. YANG, Ph.D.,
Plaintiff,

v. Civil Action No. 1:26-cv-01954-MSN-WEF

JOHN RATCLIFFE, Director of the Central Intelligence Agency,
Defendant.

**LOCAL RULE 83.1(N) CERTIFICATION**

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of, this document (Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. 25)).

Ann D. Yang, Ph.D.
Name of Pro Se Party (Print or Type)

______________________________
Signature of Pro Se Party

Executed on: October 17, 2026 (Date)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANN D. YANG, Ph.D.,
Plaintiff,

v. Civil Action No. 1:26-cv-01954-MSN-WEF

JOHN RATCLIFFE, Director of the Central Intelligence Agency,
Defendant.

**CERTIFICATE OF SERVICE**

I certify that on October 17, 2026, a true copy of Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. 25) and the accompanying [Proposed] Order will be served by certified mail, postage prepaid, on counsel of record for Defendant:

Elizabeth A. Spavins, Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314

Ann D. Yang, Ph.D., Plaintiff, Pro Se